FILED IN THE
U.S. DISTRICT COURT
EASTERN DISTRICT OF WASHINGTON

Nov 13, 2026

SEAN F. MCAVOY, CLERK

UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF WASHINGTON

| | |
|---|---|
| SPENCER N.,[1]<br><br>Plaintiff,<br><br>v.<br><br>FRANK BISIGNANO, COMMISSIONER OF SOCIAL SECURITY,<br><br>Defendant. | No. 4:26-CV-05058-MKD<br><br>ORDER REVERSING THE COMMISSIONER'S DECISION<br><br>**ECF Nos. 11, 13** |

Before the Court are the parties' briefs. ECF Nos. 11, 13. Chad Hatfield represents Plaintiff. Special Assistant United States Attorney David Burdett represents Defendant. The Court, having reviewed the administrative record and the parties' briefing, is fully informed. For the reasons discussed below, the Court

[1] To protect the privacy of plaintiffs in social security cases, the Court identifies them by only their first names and the initial of their last names. *See* LCivR 5.2(c).

reverses the Commissioner's decision and remands the case for additional administrative proceeding pursuant to sentence four of 42 U.S.C. § 405(g).

**JURISDICTION**

Plaintiff filed an application for Title XVI supplemental security income benefits on September 9, 2021, alleging disability beginning September 24, 2000. Tr. 233-38. The application was denied initially and upon reconsideration. Tr. 105-10, 112-15. An Administrative Law Judge (ALJ) held a hearing on October 15, 2024, Tr. 43-73, at which Plaintiff amended his alleged onset date to September 9, 2021, Tr. 46-47, and issued an unfavorable decision on May 13, 2025. Tr. 17-37. The Appeals Council denied review on February 11, 2026. Tr. 1-6. Plaintiff appealed this final decision on April 17, 2026. ECF No. 1.

The Court has jurisdiction over this case pursuant to 42 U.S.C. § 1383(c)(3).

**STANDARD OF REVIEW**

A district court's review of a final decision of the Commissioner of Social Security is governed by 42 U.S.C. § 405(g). The scope of review under § 405(g) is limited; the Commissioner's decision will be disturbed "only if it is not supported by substantial evidence or is based on legal error." *Hill v. Astrue*, 698 F.3d 1153, 1158 (9th Cir. 2012) (citations omitted). "Substantial evidence" means "relevant evidence [that] a reasonable mind might accept as adequate to support a conclusion." *Id.* at 1159 (quotation marks and citation omitted). Stated

differently, substantial evidence equates to "more than a mere scintilla[,] but less than a preponderance." *Id.* (quotation marks and citation omitted). In determining whether the standard has been satisfied, a reviewing court must consider the entire record as a whole rather than searching for supporting evidence in isolation. *Id.*

In reviewing a denial of benefits, a district court may not substitute its judgment for that of the Commissioner. *Edlund v. Massanari*, 253 F.3d 1152, 1156 (9th Cir. 2001), *as amended on reh'g* (Aug. 9, 2001). If the evidence in the record "is susceptible to more than one rational interpretation, [the court] must uphold the ALJ's findings if they are supported by inferences reasonably drawn from the record." *Molina v. Astrue*, 674 F.3d 1104, 1111 (9th Cir. 2012), *superseded on other grounds by* 20 C.F.R. §§ 404.1502(a), 416.902(a) (citation omitted). Further, a district court "may not reverse an ALJ's decision on account of an error that is harmless." *Id*. (citation omitted). An error is harmless "where it is inconsequential to the [ALJ's] ultimate nondisability determination." *Id*. at 1115 (quotation marks and citation omitted). The party appealing the ALJ's decision generally bears the burden of establishing that it was harmed. *Shinseki v. Sanders*, 556 U.S. 396, 409-10 (2009).

**FIVE-STEP EVALUATION PROCESS**

A claimant must satisfy two conditions to be considered "disabled" within the meaning of the Social Security Act. First, the claimant must be "unable to

engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. § 1382c(a)(3)(A). Second, the claimant's impairment must be "of such severity that he is not only unable to do his previous work[,] but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy." 42 U.S.C. § 1382c(a)(3)(B).

The Commissioner has established a five-step sequential analysis to determine whether a claimant satisfies the above criteria. *See* 20 C.F.R. § 416.920(a)(4)(i)-(v). At step one, the Commissioner considers the claimant's work activity. 20 C.F.R. § 416.920(a)(4)(i). If the claimant is engaged in "substantial gainful activity," the Commissioner must find that the claimant is not disabled. 20 C.F.R. § 416.920(b).

If the claimant is not engaged in substantial gainful activity, the analysis proceeds to step two. At this step, the Commissioner considers the severity of the claimant's impairment. 20 C.F.R. § 416.920(a)(4)(ii). If the claimant suffers from "any impairment or combination of impairments which significantly limits [his or her] physical or mental ability to do basic work activities," the analysis proceeds to step three. 20 C.F.R. § 416.920(c). If the claimant's impairment does not satisfy

this severity threshold, however, the Commissioner must find that the claimant is not disabled. *Id.*

At step three, the Commissioner compares the claimant's impairment to severe impairments recognized by the Commissioner to be so severe as to preclude a person from engaging in substantial gainful activity. 20 C.F.R. § 416.920(a)(4)(iii). If the impairment is as severe or more severe than one of the enumerated impairments, the Commissioner must find the claimant disabled and award benefits. 20 C.F.R. § 416.920(d).

If the severity of the claimant's impairment does not meet or exceed the severity of the enumerated impairments, the Commissioner must pause to assess the claimant's "residual functional capacity." Residual functional capacity (RFC), defined generally as the claimant's ability to perform physical and mental work activities on a sustained basis despite his or her limitations, 20 C.F.R. § 416.945(a)(1), is relevant to both the fourth and fifth steps of the analysis.

At step four, the Commissioner considers whether, in view of the claimant's RFC, the claimant is capable of performing work that he or she has performed in the past (past relevant work). 20 C.F.R. § 416.920(a)(4)(iv). If the claimant is capable of performing past relevant work, the Commissioner must find that the claimant is not disabled. 20 C.F.R. § 416.920(f). If the claimant is incapable of performing such work, the analysis proceeds to step five.

At step five, the Commissioner considers whether, in view of the claimant's RFC, the claimant is capable of performing other work in the national economy. 20 C.F.R. § 416.920(a)(4)(v). In making this determination, the Commissioner must also consider vocational factors such as the claimant's age, education and past work experience. *Id.* If the claimant is capable of adjusting to other work, the Commissioner must find that the claimant is not disabled. 20 C.F.R. § 416.920(g)(1). If the claimant is not capable of adjusting to other work, the analysis concludes with a finding that the claimant is disabled and is therefore entitled to benefits. *Id.*

The claimant bears the burden of proof at steps one through four above. *Tackett v. Apfel*, 180 F.3d 1094, 1098 (9th Cir. 1999). If the analysis proceeds to step five, the burden shifts to the Commissioner to establish that (1) the claimant is capable of performing other work; and (2) such work "exists in significant numbers in the national economy." 20 C.F.R. § 416.960(c)(2); *Beltran v. Astrue*, 700 F.3d 386, 389 (9th Cir. 2012).

**ALJ'S FINDINGS**

At step one, the ALJ found Plaintiff has not engaged in substantial gainful activity since September 9, 2021, the application date. Tr. 22.

At step two, the ALJ found that Plaintiff has the following severe impairments: migraines; neurocognitive disorder/motor tic disorder; anxiety; and

depression. Tr. 22.

At step three, the ALJ found Plaintiff does not have an impairment or combination of impairments that meets or medically equals the severity of a listed impairment. Tr. 23.

The ALJ then concluded that Plaintiff had the RFC to perform a full range of work at all exertional levels with the following non-exertional limitations:

> [Plaintiff] should avoid concentrated exposure to hazards, vibrations, extreme temperatures, and atmospheric conditions. [Plaintiff] should not climb ladders, ropes, or scaffolds. [Plaintiff] retains the capacity to understand and remember simple and detailed, but not complex instructions on a consistent basis in a competitive work environment. [Plaintiff] will be able to consistently remember work locations and work-like procedures.

Tr. 25.

At step four, the ALJ found Plaintiff has no past relevant work. Tr. 30. At step five, the ALJ found that, considering Plaintiff's age, education, work experience, RFC, and testimony from the vocational expert, there were jobs that existed in significant numbers in the national economy that Plaintiff could perform. Tr. 30-31. The ALJ did not, however, specify any jobs.

Therefore, the ALJ concluded Plaintiff was not under a disability, as defined in the Social Security Act, from the application date through the date of the decision. Tr. 31.

## ISSUES

Plaintiff seeks judicial review of the Commissioner's final decision denying him supplemental security income benefits under Title XVI of the Social Security Act. Plaintiff raises the following issues for review:

1. Whether the ALJ properly evaluated the medical opinion evidence;
2. Whether the ALJ properly evaluated Plaintiff's symptom claims;
3. Whether the ALJ properly evaluated the lay witness testimony;
4. Whether the ALJ erred at step three; and
5. Whether the ALJ erred at step five.

ECF No. 11 at 5.

Because the Court concludes the ALJ erred with respect to the first three issues, as discussed below, and because the ALJ's error with respect to these issues impacted the other steps of the ALJ's decision, the Court declines to address Plaintiff's remaining assignments of error. *See Hiler v. Astrue*, 687 F.3d 1208, 1212 (9th Cir. 2012) ("Because we remand the case to the ALJ for further proceedings, we do not reach [plaintiff's] alternative ground for remand.").

## DISCUSSION

### A. Medical Opinion Evidence

For claims filed on or after March 27, 2017, new regulations apply that change the framework for how an ALJ must evaluate medical opinion evidence.

*Revisions to Rules Regarding the Evaluation of Medical Evidence*, 2017 WL 168819, 82 Fed. Reg. 5844-01 (Jan. 18, 2017); 20 C.F.R. §§ 404.1520c, 416.920c. The new regulations provide that the ALJ will no longer "give any specific evidentiary weight . . . to any medical opinion(s) . . . ." *Revisions to Rules*, 2017 WL 168819, 82 Fed. Reg. 5844, at 5867-68; *see also* 20 C.F.R. §§ 404.1520c(a), 416.920c(a). Instead, an ALJ must consider and evaluate the persuasiveness of all medical opinions or prior administrative medical findings from medical sources. 20 C.F.R. §§ 404.1520c(a)-(b), 416.920c(a)-(b).

The factors for evaluating the persuasiveness of medical opinions and prior administrative medical findings include supportability, consistency, relationship with the claimant (including length of the treatment, frequency of examinations, purpose of the treatment, extent of the treatment, and the existence of an examination), specialization, and "other factors that tend to support or contradict a medical opinion or prior administrative medical finding" (including, but not limited to, "evidence showing a medical source has familiarity with the other evidence in the claim or an understanding of our disability program's policies and evidentiary requirements"). 20 C.F.R. §§ 404.1520c(c)(1)-(5), 416.920c(c)(1)-(5). Supportability and consistency are the most important factors, and therefore the ALJ is required to explain how both factors were considered. 20 C.F.R. §§ 404.1520c(b)(2), 416.920c(b)(2). Supportability and consistency are explained in

the regulations:

> *Supportability*. The more relevant the objective medical evidence and supporting explanations presented by a medical source are to support his or her medical opinion(s) or prior administrative medical finding(s), the more persuasive the medical opinions or prior administrative medical finding(s) will be.
>
> *Consistency*. The more consistent a medical opinion(s) or prior administrative medical finding(s) is with the evidence from other medical sources and nonmedical sources in the claim, the more persuasive the medical opinion(s) or prior administrative medical finding(s) will be.

20 C.F.R. §§ 404.1520c(c)(1)-(2), 416.920c(c)(1)-(2) (emphases added). The ALJ may, but is not required to, explain how the other factors were considered. 20 C.F.R. §§ 404.1520c(b)(2), 416.920c(b)(2). However, when two or more medical opinions or prior administrative findings "about the same issue are both equally well-supported . . . and consistent with the record . . . but are not exactly the same," the ALJ is required to explain how "the other most persuasive factors in paragraphs (c)(3) through (c)(5)" were considered. 20 C.F.R. §§ 404.1520c(b)(3), 416.920c(b)(3).

The Ninth Circuit addressed the issue of whether the changes to the regulations displace the longstanding case law requiring an ALJ to provide specific and legitimate reasons to reject an examining provider's opinion. *Woods v. Kijakazi*, 32 F.4th 785, 787 (9th Cir. 2022). The Court held that the new

regulations eliminate any hierarchy of medical opinions, and the specific and legitimate standard no longer applies. *Id.* The Court reasoned the "relationship factors" remain relevant under the new regulations, and thus the ALJ can still consider the length and purpose of the treatment relationship, the frequency of examinations, the kinds and extent of examinations that the medical source has performed or ordered from specialists, and whether the medical source has examined the claimant or merely reviewed the claimant's records. *Id.* at 792. However, the ALJ is not required to make specific findings regarding the relationship factors. *Id.* Even under the new regulations, an ALJ must provide an explanation supported by substantial evidence when rejecting an examining or treating doctor's opinion as unsupported or inconsistent. *Id.*

Plaintiff argues the ALJ erred by finding Stephanie Santos, ARNP's opinion unpersuasive. ECF No. 11 at 8-13. In April 2025, Ms. Santos opined that Plaintiff was limited to sedentary work, could never reach bilaterally, and could only occasionally handle and finger bilaterally. Tr. 1941. She also opined that Plaintiff would miss four or more days of work per month and would be off task more than 30 percent of a 40-hour workweek. Tr. 1941-42.

The ALJ found Ms. Santos's opinion unpersuasive, stating that "[t]here is no basis whatsoever for such limitations and the assessments are patently false." Tr. 29. An ALJ cannot reject a medical opinion as unsupported "without providing an

explanation supported by substantial evidence." *Woods*, 32 F.4th at 792. Substantial evidence does not support this finding as to the assessed limitations in attendance and task completion. Ms. Santos explained that Plaintiff experienced migraines five to six days per week that limited his activities. Tr. 1941. She also explained that difficulty focusing and involuntary movements interfered with his activities and that continuous work would worsen his symptoms and trigger additional episodes. Tr. 1940. The ALJ summarized some of these explanations but did not explain why they failed to support the assessed limitations. Tr. 29.

Ms. Santos had also previously described how Plaintiff's movement symptoms interfered with completing tasks. In April 2021, she reported that Plaintiff experienced daily motor tics, including uncontrolled movements of his extremities and jerking of his head, that made it difficult to write, type, focus, and absorb information. Tr. 469. She recommended "extended time to complete class work or testing." Tr. 469. Although this assessment preceded the application date, Plaintiff continued reporting similar difficulties afterward, including the need to interrupt welding classes and sometimes lie down during more severe episodes. Tr. 1303. The ALJ did not address Ms. Santos's earlier explanation in finding that her assessed limitations lacked any basis.

The ALJ also found Ms. Santos's opinion inconsistent with specialist findings that Plaintiff had no laboratory abnormalities associated with his

symptoms, no evidence of vasculitis, and no ocular abnormalities that would severely impair his vision. Tr. 29. Those findings bear on Ms. Santos's identification of possible vasculitis and optic neuritis. Her opinion, however, also attributed functional limitations to headaches and involuntary movements. Tr. 1940-41. The ALJ found migraines and motor tic disorder to be severe impairments but did not explain how the absence of vasculitis or significant ocular abnormalities undermined the limitations associated with those impairments.

Finally, the ALJ relied on findings of normal gait, station, strength, and neurological functioning. Tr. 29. As the Ninth Circuit recently explained, "strength and the physical ability to perform work are not necessarily inconsistent with debilitating pain." *Ortiz v. Bisignano*, 179 F.4th 691, 700 (9th Cir. 2026). The ALJ thus must consider whether the examination findings account for the symptoms underlying the assessed limitations. *See id.* at 699-700. Substantial evidence does not support reliance on these findings to reject the assessed interruptions in attendance and task completion. For example, Dr. Witt observed abnormal neck movements during the same examination that documented full strength, normal coordination, and normal gait. Tr. 1308. She subsequently explained that the observed movements were most consistent with functional movement disorder. Tr. 1304-05. Similarly, Plaintiff reported migraines occurring daily or several days per week during a neurology visit that documented normal

strength, sensation, and gait. Tr. 1475-76. The neurologist prescribed preventive headache medication. Tr. 1477. The ALJ did not explain how the normal examination findings contradicted Ms. Santos's assessment of limitations arising from the frequency and duration of Plaintiff's symptoms. *Cf. Ferguson v. O'Malley*, 95 F.4th 1194, 1200-01 (9th Cir. 2024) (rejecting reliance on normal neurological findings without an explanation of how they conflicted with testimony about the "severity and frequency" of headaches).

The ALJ accordingly erred by discounting Ms. Santos's opinion.

**B. Plaintiff's Testimony**

Plaintiff faults the ALJ for failing to rely on reasons that were clear and convincing in discrediting his symptom claims. ECF No. 11 at 17-21. An ALJ engages in a two-step analysis to determine whether to discount a claimant's testimony regarding subjective symptoms. SSR 16-3p, 2016 WL 1119029, at *2 (Mar. 16, 2016). "First, the ALJ must determine whether there is objective medical evidence of an underlying impairment which could reasonably be expected to produce the pain or other symptoms alleged." *Molina*, 674 F.3d at 1112 (quotation marks and citation omitted). "The claimant is not required to show that [the claimant's] impairment could reasonably be expected to cause the severity of the symptom [the claimant] has alleged; [the claimant] need only show that it could reasonably have caused some degree of the symptom." *Vasquez v.*

*Astrue*, 572 F.3d 586, 591 (9th Cir. 2009) (quotation marks and citation omitted).

Second, "[i]f the claimant meets the first test and there is no evidence of malingering, the ALJ can only reject the claimant's testimony about the severity of the symptoms if [the ALJ] gives 'specific, clear and convincing reasons' for the rejection." *Ghanim v. Colvin*, 763 F.3d 1154, 1163 (9th Cir. 2014) (citation and footnote omitted). General findings are insufficient; rather, the ALJ must identify what symptom claims are being discounted and what evidence undermines these claims. *Id.* (quoting *Lester v. Chater*, 81 F.3d 821, 834 (9th Cir. 1995), *as amended* (Apr. 9, 1996)); *Thomas v. Barnhart*, 278 F.3d 947, 958 (9th Cir. 2002) (requiring the ALJ to sufficiently explain why it discounted claimant's symptom claims). "The clear and convincing [evidence] standard is the most demanding required in Social Security cases." *Garrison*, 759 F.3d at 1015 (quoting *Moore v. Comm'r of Soc. Sec. Admin.*, 278 F.3d 920, 924 (9th Cir. 2002)).

Factors to be considered in evaluating the intensity, persistence, and limiting effects of a claimant's symptoms include: (1) daily activities; (2) the location, duration, frequency, and intensity of pain or other symptoms; (3) factors that precipitate and aggravate the symptoms; (4) the type, dosage, effectiveness, and side effects of any medication an individual takes or has taken to alleviate pain or other symptoms; (5) treatment, other than medication, an individual receives or has received for relief of pain or other symptoms; (6) any measures other than

treatment an individual uses or has used to relieve pain or other symptoms; and (7) any other factors concerning an individual's functional limitations and restrictions due to pain or other symptoms. SSR 16-3p, 2016 WL 1119029, at *7; 20 C.F.R. § 416.929(c). The ALJ is instructed to "consider all of the evidence in an individual's record," to "determine how symptoms limit ability to perform work-related activities." SSR 16-3p, 2016 WL 1119029, at *2.

The ALJ found that Plaintiff's medically determinable impairments could reasonably be expected to cause some of the alleged symptoms, but that Plaintiff's statements concerning the intensity, persistence, and limiting effects of his symptoms were not entirely consistent with the evidence. Tr. 26.

First, the ALJ discounted Plaintiff's symptom claims based on normal imaging and examination findings, including normal strength, gait, cognition, and neurological functioning. Tr. 26-27. Substantial evidence does not support this reasoning as to Plaintiff's recurring headaches and movement symptoms. Plaintiff testified that he experienced migraines approximately five days per week and ordinarily lay down in a dark room when they occurred. Tr. 59-60. Even when sumatriptan helped, he needed approximately three hours before he could get back up. Tr. 70. The ALJ did not explain how normal strength, gait, or cognition contradicted the frequency or duration of these episodes. *See Ferguson*, 95 F.4th at 1200-01 (rejecting reliance on normal neurological findings without an

explanation of how they contradicted the claimant's headache testimony). The absence of involuntary movements during some examinations also did not establish that Plaintiff could sustain activity without interruption. Plaintiff described episodes occurring four or five times per week, with movements occurring intermittently over several hours and resulting fatigue. Tr. 62-64. As discussed above, Dr. Witt observed abnormal neck movements during an examination that otherwise showed normal strength, coordination, and gait. Tr. 1308. The ALJ acknowledged that the movements were prominent during part of that examination and later resolved. Tr. 26. That observation was consistent with the episodic nature of Plaintiff's reported symptoms. *Cf. Ortiz*, 179 F.4th at 702-03 (explaining that normal presentation during isolated examinations did not contradict limitations arising from episodic symptoms).

Second, the ALJ discounted Plaintiff's complaints because he had not pursued cognitive behavioral therapy and had not consistently taken prescribed medication. Tr. 27. Before drawing an adverse inference from a failure to obtain treatment, an ALJ must consider Plaintiff's explanations and other evidence accounting for the treatment history. *Orn v. Astrue*, 495 F.3d 625, 638 (9th Cir. 2007). A conservative course of treatment does not justify discounting symptom testimony when Plaintiff has "a good reason for not seeking more aggressive treatment." *Carmickle v. Comm'r, Soc. Sec. Admin.*, 533 F.3d 1155, 1162 (9th Cir.

2008). The record documents efforts to obtain the recommended therapy. Plaintiff reported requesting a referral but not hearing back. Tr. 1303. His providers subsequently contacted several practices to locate a therapist, including one that was not accepting new Medicaid patients. Tr. 1337, 1356-57. A counseling appointment was scheduled, and a later neurology note identified scheduling conflicts as a barrier to accessing care. Tr. 1422, 1482. The ALJ did not address these efforts and barriers before concluding that Plaintiff had not pursued treatment. The medication history also required further consideration. The Ninth Circuit has rejected reliance on medication noncompliance where the claimant attributed side effects to medication and the ALJ "did not evaluate that claim or find it to be unbelievable." *Trevizo v. Berryhill*, 871 F.3d 664, 680 (9th Cir. 2017). Although unexplained noncompliance may undermine symptom testimony, the ALJ must evaluate the claimant's explanation before relying on that instance of noncompliance. *Id.* at 680-81. Here, after consulting with Dr. Witt, Ms. Santos discontinued Topamax because medication directed at motor tics was not recommended for Plaintiff's functional movement disorder. Tr. 1304-05, 1356. In July 2023, Plaintiff reported that propranolol helped his headaches but caused nausea and anxiety, and his neurologist advised him to stop taking it. Tr. 1516-17. He subsequently elected to retry a lower dose with medication for nausea. Tr. 1518. The ALJ acknowledged the reported side effects but did not account for

these treatment decisions when concluding that Plaintiff's failure to follow simple measures showed his symptoms were less severe than alleged. Tr. 26-27.

Third, the ALJ relied on Plaintiff's ability to perform personal care, climb stairs, occasionally drive, and play video games. Tr. 27-28. Daily activities may support discounting symptom testimony when they contradict the claimant's other testimony or demonstrate skills transferable to a work setting. *Orn*, 495 F.3d at 639. When relying on transferability, the ALJ must make specific findings concerning the activities and their relationship to work functions. *Id.* The ALJ did not explain how personal care, stair climbing, or occasional driving contradicted Plaintiff's testimony that recurring episodes required him to stop activity and lie down. A claimant's ability to perform daily activities between headaches does not necessarily contradict the limitations experienced during them. *See Ferguson*, 95 F.4th at 1203 ("Ferguson can both do nothing when he has severe headaches and engage in his daily activities when he does not."). The ALJ also relied on reports that Plaintiff played video games for more than twelve hours per day and had not consistently followed his physical therapist's recommendations to modify that activity. Tr. 28. Although this gaming evidence was relevant to manipulation and pace, the January 2025 reports of extensive gaming were followed by an exacerbation of Plaintiff's functional movement disorder during which he spent most of the preceding week in bed. Tr. 1911, 1927, 1929. The ALJ did not

address that exacerbation when evaluating whether Plaintiff's gaming demonstrated an ability to sustain activity despite recurring symptoms. *See Reddick v. Chater*, 157 F.3d 715, 723 (9th Cir. 1998) (finding error where the ALJ developed his evidentiary basis by "not fully accounting for the context of materials or all parts of the testimony and reports"). The treatment records also documented efforts to get up more frequently, perform home exercises, and change his seating position, and the therapist described good motivation to participate in treatment. Tr. 1912, 1929. These recommendations principally addressed pelvic pain and bowel functioning. Tr. 1912, 1927. The ALJ did not explain how incomplete adherence to those recommendations undermined Plaintiff's testimony concerning the frequency and duration of his headaches.

Finally, the ALJ relied on perceived inconsistencies in Plaintiff's statements and his participation in welding classes. Tr. 28. During the consultative examination, Plaintiff described movement episodes occurring randomly and in connection with moving furniture. When asked whether he moved furniture four times per week, he responded that he did not. Tr. 1891. That exchange created ambiguity about a particular trigger, but it did not resolve Plaintiff's report of random episodes or concern his separate headache complaints. *Cf. Trevizo*, 871 F.3d at 681-82 (rejecting reliance on purportedly inconsistent statements that were compatible when considered together). The ALJ also relied on an October 2021

report that Plaintiff only occasionally noticed involuntary movements during welding classes to conclude that he could maintain pace during a normal workday with standard breaks. Tr. 28. That report also stated that his movements flared after class and left him exhausted. Tr. 1306. In January 2022, Plaintiff reported needing to interrupt class and sometimes lie down during more severe episodes. Tr. 1303. He later testified that his classes lasted three hours and that, on days requiring breaks, he took approximately three thirty-minute breaks to lie down because of his movement symptoms and migraines. Tr. 66-67. The ALJ did not address those interruptions when concluding that Plaintiff's class participation demonstrated an ability to maintain a normal workday. Activities that permit rest or lying down do not necessarily establish an ability to sustain full-time work. *See Trevizo*, 871 F.3d at 682. The ALJ also had to consider Plaintiff's later reports of limitations when relying on his earlier class participation. *See Collard v. Bisignano*, --- F.4th ----, No. 25-6334, slip op. at 8-10 (9th Cir. Sept. 23, 2026) (rejecting reliance on earlier work and daily activities without accounting for subsequent symptoms and accompanying limitations). Although the gaming evidence supports questioning some of Plaintiff's alleged limitations, the remaining reasoning does not adequately support rejecting his testimony concerning recurring headaches and the resulting need to interrupt activity and lie down.

The ALJ accordingly erred by discounting Plaintiff's testimony.

**C. Lay Witness Testimony**

Plaintiff argues the ALJ erred by discounting the statement of his mother. ECF No. 11 at 15-17. An ALJ must consider lay witness testimony concerning a claimant's ability to work and "give germane reasons for discrediting the testimony of lay witnesses." *Fain v. Bisignano*, --- F.4th ----, No. 25-3219, slip op. at 11-12 (9th Cir. Sept. 18, 2026) (quoting *Bayliss v. Barnhart*, 427 F.3d 1211, 1218 (9th Cir. 2005)). Although an ALJ need not evaluate nonmedical evidence using the criteria applicable to medical opinions, the ALJ must still explain why the evidence is discounted. *Id.* at 12-15.

In October 2024, Plaintiff's mother reported that Plaintiff experienced motor tic episodes three to six days per week, causing spasms, brain fog, fatigue, and other symptoms. She also reported migraines five to six days per week that required him to lie down and close his eyes for at least five to six hours. Tr. 353. She explained that medications had provided little relief or worsened his symptoms and that family members assisted him with daily activities, transportation, and communication during episodes of brain fog. Tr. 353.

The ALJ discounted Plaintiff's mother's statement for the same reasons given for discounting Plaintiff's testimony, finding her observations "incongruous with normal exam findings and failure to follow prescribed treatment." Tr. 30. As

discussed above, the normal examination findings did not address the frequency and duration of Plaintiff's recurring symptoms, and the ALJ did not adequately consider the documented treatment barriers and medication side effects. Those deficiencies also undermine the ALJ's stated reasons for discounting Plaintiff's mother's observations. *See Collard*, No. 25-6334, slip op. at 11-12 (finding error where the ALJ rejected lay testimony using the same deficient reasoning applied to the claimant's testimony). The ALJ therefore failed to provide germane reasons for discounting her statement.

**D. Scope of Remand**

When the ALJ commits legal error in denying a claim for benefits, as here, the Court "ordinarily must remand to the agency for further proceedings before directing an award of benefits." *Leon v. Berryhill*, 880 F.3d 1041, 1045 (9th Cir. 2017). The Social Security Act, however, grants district courts flexibility in certain circumstances to reverse the ALJ's decision and remand for an immediate award of benefits rather than further administrative proceedings. *Treichler v. Comm'r of Soc. Sec. Admin.*, 775 F.3d 1090, 1099 (9th Cir. 2014). Plaintiff seeks such a remedy.

Remand for an immediate award of benefits is allowed only when three requirements (collectively referred to as the "credit-as-true" rule) are satisfied: (1) the ALJ failed to provide legally sufficient reasons for rejecting evidence, whether

that evidence is claimant testimony or a medical opinion; (2) there are no outstanding issues that must be resolved before a disability determination can be made, the record is fully developed, and further administrative proceedings would serve no useful purpose; and (3) if the improperly discredited evidence were credited as true, the record as a whole would require the ALJ to find the claimant disabled on remand. *Leon*, 880 F.3d at 1045; *Garrison*, 759 F.3d at 1020. Even if all three requirements are met, the decision whether to remand a case for further proceedings or simply award benefits is in the Court's discretion. *Washington v. Kijakazi*, 72 F.4th 1029, 1041 (9th Cir. 2023). The Court may still remand for further proceedings "when the record as a whole creates serious doubt as to whether the claimant is, in fact, disabled." *Garrison*, 759 F.3d at 1021.

Here, the medical evidence, Plaintiff's testimony, and the lay witness testimony must be reweighed, and this is a function the Court cannot perform in the first instance on appeal. Further proceedings are thus not only helpful but necessary. *See Brown-Hunter v. Colvin*, 806 F.3d 487, 495 (9th Cir. 2015) (noting a remand for an immediate award of benefits is an "extreme remedy," appropriate "only in 'rare circumstances'") (quoting *Treichler*, 775 F.3d at 1099).

## CONCLUSION

Having reviewed the record and the ALJ's findings, the Court concludes the ALJ's decision is not supported by substantial evidence and free of harmful legal

error.

Accordingly, **IT IS HEREBY ORDERED**:

1. Plaintiff's Brief, **ECF No. 11**, is **GRANTED**.

2. Defendant's Brief, **ECF No. 13**, is **DENIED**.

3. The District Court Executive shall enter **JUDGMENT** in favor of Plaintiff REVERSING and REMANDING the matter to the Commissioner of Social Security for further proceedings consistent with this Order pursuant to sentence four of 42 U.S.C. § 405(g).

The District Court Executive is directed to file this Order, provide copies to counsel, and **CLOSE THE FILE.**

DATED November 13, 2026.

*s/Mary K. Dimke*
MARY K. DIMKE
UNITED STATES DISTRICT JUDGE